THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JOHN DOE, } | |
| Plaintiff, } | |
| v. } | CASE NO.: 7:21-cv-308-RDP |
| RHOC, INC., } | |
| Defendant. } | |

## MEMORANDUM OPINION

This motion is before the court on Defendant RHOC Inc.'s Motion for Summary Judgment. (Doc. # 62). This Motion has been fully briefed. (Doc. # 62, # 66). After careful review, and for the reasons outlined below, the Motion is due to be granted in part and denied in part.

I.  **Background**[1]

Plaintiff John Doe ("Plaintiff") has been diagnosed with behavioral and psychological issues, including Impulse Control Disorder, Mild Mental Retardation, and Seizure Disorder. (Doc. # 31, ¶ 7). Due to these disabilities, at a young age Plaintiff was involuntarily committed to the care and custody of the Alabama Department of Mental Health. (*Id.*).

Around 2015 or 2016, Plaintiff was admitted to Defendant RHOC Inc.'s ("RHOC") group home for physically and intellectually disabled individuals in Tuscaloosa County. (*Id.* at ¶ 8). The group home was privately owned by Alberry James ("Al James"), Sherman James, and Larry Williams ("Williams"). (Doc. # 66, ¶ 8). It received federal assistance. (Doc. # 31, ¶ 23).

---

[1] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the non-moving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Plaintiff alleges that during his two years of residence at the group home, he was repeatedly and severely abused and neglected by the staff and one of the owners at RHOC. (*Id.* at ¶ 9). Specifically, Plaintiff alleges that Al James and his son (who both were "Mental Health Workers" at RHOC) were observed "repeatedly striking, violently assaulting, abusing, neglecting, and exploiting [Plaintiff] on multiple occasion at the group home." (*Id.* at ¶¶ 9, 10).

Williams -- a former employee and partial owner of RHOC -- stated in a signed affidavit that Plaintiff had personally reported to him that Al James was abusing and neglecting Plaintiff. (Doc. # 42-2, ¶ 7). In addition, Williams himself personally witnessed Al James physically abusing and mistreating Plaintiff and excluding him from RHOC therapeutic programs. (*Id.* at ¶ 8). Although none of the abuse or mistreatment ever resulted in hospitalization, Williams stated that Al James would slap and squeeze Plaintiff on the back of the neck and punch him in the stomach, and Plaintiff would complain to Williams that it hurt. (*Id.* at ¶ 9). During these occasions, Williams would let his co-owners know about what he had witnessed but stated that he never reported the incidents to the Alabama Department of Mental Health or Plaintiff's family. (Doc. # 37-1 at 22-23). Williams stated that he never witnessed any other employee at RHOC abusing Plaintiff. (*Id.* at 19).

Plaintiff officially left RHOC on December 23, 2016. (Doc. # 37-2 at 14). Plaintiff (by and through his legal guardian) filed this action against RHOC on February 26, 2021. (Doc. # 1).

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking

for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof at trial, he must come forward with at least some evidence to support each element essential to his case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**III.    Discussion**

Plaintiff filed this action against RHOC on February 26, 2021. (Doc. # 1). He amended his complaint on January 18, 2022 (Doc. # 31). The amended pleading included the following claims: Violation of the Rehabilitation Act (Count I); Negligence/Wantonness (Count II); Assault/Battery/Neglect/Mistreatment (Count III); Harassment – Americans with Disabilities Act and Rehabilitation Act (Count IV); Negligent/Wanton Hiring/Retention/Training/Supervision (Count V); Violation of Fair Housing Act (Count VI); Violation of Americans with Disabilities Act (Count VII); Menacing (Count VIII); and Retaliation under the Fair Housing Act, Rehabilitation Act, and Americans with Disabilities Act (Count IX). (Doc. # 31).

After the filing of the amended complaint, Plaintiff agreed that allegations of Menacing (Count VIII) should be dismissed. (Doc. # 72). Plaintiff has also conceded that the claims based upon the Fair Housing Act and Americans with Disabilities Act could also be dismissed. (Doc. # 57). The court entered orders dismissing those claims. (Docs. # 57, 72). This eliminated all of the claims in Counts VI and VII and parts of Counts IV and IX.

Therefore, Plaintiff currently presses the following claims against RHOC: Violation of the Rehabilitation Act (Count I); Negligence/Wantonness (Count II); Assault/Battery/Neglect/Mistreatment (Count III); Harassment under the Rehabilitation Act (Count IV); Negligent/Wanton Hiring/Retention/Training/Supervision (Count V); and Retaliation under the Rehabilitation Act (Count XI).

RHOC's Motion for Summary Judgment is targeted at each of the remaining claims asserted against them. (Doc. # 62). Specifically, RHOC argues it is entitled to summary judgment because (1) all of Plaintiff's claims under the Rehabilitation Act fail as a matter of law and (2) all of Plaintiff's remaining claims are barred by the applicable statute of limitations. (Doc. # 63 at 5). The court addresses each of these arguments in turn.

    a.    **Plaintiff's Claims under the Rehabilitation Act**

Plaintiff asserts three claims against RHOC under the Rehabilitation Act: (1) Violation of the Rehabilitation Act; (2) Harassment under the Rehabilitation Act; and (3) Retaliation under the Rehabilitation Act. (Doc. # 31).

Section 504 of the Rehabilitation Act of 1973, codified as 29 U.S.C.A. § 794, provides that "[n]o otherwise qualified individual with a disability…shall, solely by reason of his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." *See* 29 U.S.C. 794(a).

RHOC alleges that, for three reasons, it is entitled to summary judgment on all three of the claims under the Rehabilitation Act. First, RHOC alleges that all of Plaintiff's claims under the Rehabilitation Act should fail because it is a private corporation that is not subject to the Act. (Doc. # 63 at 8). Second, RHOC alleges that all of Plaintiff's claims under the Rehabilitation Act fail as a matter of law because there is no evidence in the Rule 56 file of discriminatory conduct. (*Id.* at

5

5). Finally, RHOC alleges that Plaintiff's claim for Retaliation under the Rehabilitation Act fails because there is no factual support for it. (*Id.* at 8). The court addresses each of these arguments separately below.

> **i. Because RHOC receives federal funding and is principally engaged in the business of providing health care and housing, it is subject to the Rehabilitation Act.**

Under the Rehabilitation Act, discrimination on the basis of disability is prohibited for any "program or activity" receiving "Federal financial assistance." 29 U.S.C. § 794(a). The statute defines a "program or activity" as "all of the operations" of a private organization if either: (1) the private organization as a whole receives federal financial assistance; or (2) the private organization receives some federal funding and is "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation." 29 U.S.C. § 794(b)(3)(A)(i)-(ii). RHOC maintains that, although the group home receives payments from Medicare, Medicaid, and Social Security for services provided, these payments do not constitute "federal assistance," which is necessary to invoke the application of the Rehabilitation Act. (Doc. # 63 at 10). The court disagrees.

It is well established that, "[o]n its face....[section 504] applies to programs receiving federal financial aid *of any kind*." *Arline v. Sch. Bd. of Nassau Cty.*, 772 F.2d 759, 762 (11th Cir. 1995) (quoting *Jones v. Metro. Atlanta Rapid Transit Auth.*, 681 F.2d 1376, 1379 (11th Cir. 1982), cert. denied, 465 U.S. 1099, 104 S. Ct. 1591, 80 L. Ed. 2d 123 (1984) (emphasis added)).

Further, the Eleventh Circuit has squarely held that a privately-owned hospital receiving Medicaid funds was subject to the Rehabilitation Act. *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 830 (11th Cir. 2017) ("Defendants are two hospitals, Baptist Hospital and SMH, and their parent organization, Baptist Health. As places of public accommodation and recipients of federal

6

Medicaid funds, Defendants are obligated to follow the mandates of the ADA and [Rehabilitation Act]…"). And, although not binding, the Fifth Circuit has held similarly. *See U.S. v. Baylor Univ. Medical Ctr.*, 736 F.2d 1039, 1042 (5th Cir. 1984) (holding that Medicare and Medicaid qualify as federal financial assistance for the purpose of § 504).

Williams admitted in his affidavit that, from 2004 to 2019, RHOC received extensive federal financial assistance, including Medicaid and Social Security, for the care of the residential mental health patients living in the facilities. (Doc. # 66-2, ¶ 3). Under these facts, viewed in the light most favorable to Plaintiff, a reasonable juror could find that RHOC is a private organization that receives federal funding and is "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation," making it subject to the Rehabilitation Act. 29 U.S.C. § 794(b)(3)(A)(ii). Therefore, RHOC is not entitled to summary judgment on its coverage argument.

### ii. Plaintiff has presented substantial evidence of discriminatory conduct to survive summary judgment.

To establish discrimination under Section 504, a plaintiff must show "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

Here, there is no dispute that Plaintiff is "disabled" as defined by the statute. And, as discussed above, RHOC qualifies as a public entity under the Rehabilitation Act. RHOC's argument is that Plaintiff has not presented substantial evidence indicating that any of the alleged abuse resulted from discriminatory motive or intent. (Doc. # 63 at 8).

Plaintiff disagrees, arguing that deliberate indifference is the appropriate standard for defining whether intentional discrimination was present in this case. (Doc. # 66 at 15) (citing *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 345 (11th Cir. 2012)). Within the context of the Rehabilitation Act, the Eleventh Circuit has explained that deliberate indifference exists where "the defendant *knew* that harm to a federally protected right was substantially likely…and *failed* to act on that likelihood." *Liese*, 701 F.3d at 344. Deliberate indifference requires something more than gross negligence; it requires that the "indifference be a deliberate choice." *Id.*

According to *Liese*, Title IX case law examining discriminatory intent under the deliberate indifference standard is instructive. *Id.* at 349 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 542 U.S. 274 (1998)). In determining organizational liability, the court looked to *Gebser*, which requires "the deliberate indifference of 'an *official* who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the [organization's] behalf [and who] has *actual knowledge* of discrimination in the [organization's] programs and fails to adequately respond." *Id.* (quoting *Gebser*, 524 U.S. at 290) (emphasis in original). The court further defined an "official" as "someone who enjoys substantial authority within an organization's chain of command so that, when dealing with the complainant, the official had complete discretion at a 'key decision point' in the administrative process." *Id.* at 350 (quoting *Doe v. Sch. Bd. Of Broward Cnty., Fla.*, 604 F.3d 1248, 1256-57 (11th Cir. 2010)). The "key decision point" language ensures that review by a higher authority is "not part of the entity's ordinary decision-making process." *Id.*

Therefore, to survive summary judgment, Plaintiff must show that a reasonable juror could find that (1) officials with substantial authority at RHOC knew that Plaintiff was being abused; (2) those officials had the authority to either report the abuse or order that the abuse stop; and (3) the

officials were deliberately indifferent as to the failure to stop the abuse. *Liese*, 701 F.3d at 351. Here, the record, viewed in a light most favorable to Plaintiff, would support such a finding that the conduct alleged meets all three of these essential elements.

As to the first prong, it is axiomatic a jury could find that officials with substantial authority at RHOC knew that Plaintiff was being abused. Plaintiff alleges that his abuser was Al James – one of the owners of the group home. Therefore, Al James would have had the *ultimate* authority to stop any alleged abuse. Further, Williams -- another partial owner of RHOC -- admitted that not only had Plaintiff complained about the abuse to him, but that he had even personally witnessed Al James abusing Plaintiff several times.

With respect to the second and third prongs, a reasonable juror could find that both Al James and Williams had the authority to report the abuse but failed to do so. As mentioned earlier, deliberate indifference exists where "the defendant *knew* that harm to a federally protected right was substantially likely…and *failed* to act on that likelihood." *Liese*, 701 F.3d at 344. Plaintiff had a federally protected right to be free from abuse – *i.e.*, patient in a mental health hospital has a substantiative due process right to a safe environment. *Kyle K v. Chapman*, 208 F.3d 940, 943 (11th Cir. 2000). Further, "a claim that those charged with the responsibility of providing daily care to such a patient inflicted physical or mental abuse on him states the denial of a constitutional right." *Id.*

There is substantial evidence indicating that neither Al James nor Williams took any actions to stop the possible abuse of Plaintiff. As co-owners, administrators, and board members, both Al James and Williams were the "administration and management of RHOC" and had complete power over the administration. (Doc. # 66-2, ¶ 20). In fact, Williams himself testified, "We were required by our own policies and procedures and the Department of Mental Health

policies and procedures to report actual and suspected abuse of any of our residents to the Department of Mental Health, the local RCS, and the local Director. However, RHOC did not report the abuse and mistreatment of [Plaintiff] to outside authorities as we were required to do." (*Id.* at ¶ 11).

Finally, based on the evidence presented, a reasonable juror could find that Plaintiff was abused *because of* his disabilities. In his affidavit, Williams stated that he believed that Al James was prejudiced against intellectually disabled individuals, and that he abused and mistreated Plaintiff only because of his disability. (Doc. # 42-2, ¶¶ 10, 12). Furthermore, Williams stated that although he witnessed Al James strike other disabled people, he never saw him strike a non-disabled person. (*Id.* at ¶ 12e).

Therefore, when viewing the evidence in the light most favorable to Plaintiff, this court believes that that Plaintiff has presented substantial evidence that the alleged abuse resulted from discriminatory motive or intent, and RHOC's argument fails.

> **iii. Because Plaintiff has not established a prima facie case for retaliation under the Rehabilitation Act, RHOC is entitled to summary judgment on Plaintiff's Retaliation Claim.**

Finally, RHOC alleges that they are entitled to summary judgment on Plaintiff's claim for Retaliation under the Rehabilitation Act fails because there is no factual support for it. The court agrees.

The standard for bringing a retaliation claim under the Rehabilitation Act is the same as that under the ADA. *Albra v. City of Fort Lauderdale*, 232 Fed. App'x 885, 891 (11th Cir. 2007); *see also Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1526 n. 2 (11th Cir. 1997) (stating that ADA discrimination law applies to the Rehabilitation Act). Therefore, to establish a prima facie case for retaliation under the Rehabilitation Act, a plaintiff must show that: (1) he participated

10

in a statutorily protected activity or expression; (2) he suffered an adverse action; and (3) the adverse action was related to the protected activity. *Albra*, 232 Fed. App'x at 891 (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 (11th Cir. 2003)).

In his complaint, Plaintiff alleges that he and his family filed numerous complaints concerning the allegations of neglect, mistreatment, and exploitation, and in retaliation for those complaints, RHOC's employees increased their abuse, neglect, mistreatment, and exploitation of Plaintiff. (Doc. # 31, ¶¶ 93-94). However, not only has Plaintiff produced no factual evidence supporting this argument, but the evidence that *has* been offered clearly negates this contention.

In her deposition, Michelle Smith-Watwood, Plaintiff's sister, stated that she never made a complaint to anyone at RHOC about the alleged physical abuse, nor had anyone in her family. (Doc. # 37-2 at 12). Similarly, Al James testified that none of Plaintiff's family members ever complained to him of any alleged abuse. (Doc. # 42-3 at 17). And, although Williams testified that Plaintiff reported to him that he was being abused by Al James, Plaintiff has produced no evidence showing that Al James's abuse stemmed from him reporting the abuse or that the abuse increased because Plaintiff reported the activity. In other words, there is no evidence in the Rule 56 file suggesting that any adverse action was related to any protected activity.

Therefore, although Plaintiff asserts that he was retaliated against for reporting abuse, he offers no facts to support his claim in his Response to RHOC's Motion for Summary Judgment. Plaintiff cannot simply rely on his complaint to create a jury question. *See Anderson*, 477 U.S. at 252. Rather, he must come forward with substantial evidence indicating that RHOC retaliated against him for reporting the alleged abuse. Here, he has failed to do so. Therefore, summary judgment for RHOC on Plaintiff's Retaliation claim is proper.

**b.     RHOC is not entitled to summary judgment on Plaintiff's remaining claims based on the statute of limitations.**

In addition to alleging that it is entitled summary judgment on each of Plaintiff's claims under the Rehabilitation Act, RHOC also asserts that summary judgment is proper on all of Plaintiff's other claims because they are all time-barred. The court disagrees.

As RHOC correctly notes, the Rehabilitation Act does not have an independent statute of limitations. (Doc. # 63 at 10). In this vacuum, Rehabilitation Act claims are governed by the most analogous state statute of limitations. *Everett v. Cobb Cty. Sch. Dist.*, 138 F.3d 1407, 1409-1410 (11th Cir. 1998) (adopting the state's statute of limitations for personal injury actions to Rehabilitation Act claims). In this case, the most analogous limitations period is Alabama's two-year statute of limitations for personal injury actions. *See* Ala. Code § 6-2-38(l) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."). Thus, the statute of limitations in Alabama for all claims under the Rehabilitation Act is two years. Similarly, and as RHOC again correctly notes, all of the state law causes of action that Plaintiff asserts in his complaint are also governed by Alabama's two-year statute of limitations. (Doc. # 63 at 10).

Importantly, Alabama law includes a disability tolling provision for its civil statutes of limitations.

> If anyone entitled to commence any of the actions enumerated in this chapter…is, at the time the right accrues, below the age of 19 years, or insane, he or she shall have three years, or the period allowed by law for the commencement of an action if it be less than three years, after the termination of the disability to commence an action, make entry, or defend. No disability shall extend the period of limitations so as to allow an action to be commenced, entry made, or defense made after the lapse of 20 years from the time the claim or right accrued.

Ala. Code § 6-2-8(a). The Alabama Supreme Court has emphasized that "[s]ection 6-2-8 demonstrates [a] legislative response to the need to protect individuals suffering under certain

disabilities." *Emerson v. S. Ry. Co.*, 404 So. 2d 576, 578 (Ala. 1981). In accordance with that purpose, the Alabama Supreme Court has held that the tolling provision applies even if, as in this case, the injured party is represented by a guardian or representative who does not fall within the protection of Section 6-2-8. *Id.* at 579.

RHOC does not dispute the existence of the tolling provision under § 6-2-8(a). Instead, it argues that the evidence fails to show that Plaintiff is "insane" as required under the statue for the provision to apply here. But, this argument misses the mark.

As referenced earlier, Plaintiff was diagnosed with behavioral and psychological issues in his early childhood and was involuntarily committed to the care and custody of the Alabama Department of Mental Health at a young age. (Doc. # 31, ¶ 7). The Probate Court of Tuscaloosa County, Alabama has declared that he is "an incapacitated person within the meaning of the Ala[bama] Code, Section 26-2A-20(8), in that he is impaired by reason of mental deficiency and mental illness, to the extent of lacking sufficient understanding, memory and capacity to make and communicate reasonable decisions about his care and treatment." (Doc. # 66-16, ¶ 3). He requires a guardian to plan for him, make decisions, and give consent for any care and treatment he needs. (*Id*. at ¶ 4; Doc. # 66-13).

Further, in their official Behavior Support Plan, RHOC itself noted that Plaintiff had a history of brain injury and psychiatric history that included diagnoses of "Schizoaffective Disorder (bipolar type), Schizophrenia, Impulse Control Disorder, and Behavior Disorder," among others. (Doc. # 69-2 at 4). And, this court has previously held that such an individual is entitled to protection under the disability tolling provision of Alabama Code § 6-2-8(a). *See Warren by and through Robinson v. Ala. Dept. of Mental Health*, 2017 WL 1282244, *3 (N.D. Ala. 2017)

13

("Plaintiff is entitled to benefit from Section 6-2-8(a)'s tolling provision according to its express terms…").

Therefore, when evaluating these facts in the light most favorable to the non-moving party, this court concludes that there is substantial evidence presented that would permit a reasonable juror to find that Plaintiff is "insane" as required under Alabama Code § 6-2-8(a) to trigger the tolling provision. Consequently, RHOC's argument that all Plaintiff's claims are time-barred under the statute of limitations fails, and its request for summary judgment on that ground is due to be denied.

### IV.   Conclusion

For the reasons discussed above, RHOC's Motion for Summary Judgment is due to be granted as to Plaintiff's Retaliation claim under the Rehabilitation Act. However, RHOC's Motion for Summary Judgment is due to be denied as to all other claims.

**DONE** and **ORDERED** this November 7, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE